# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-23070-CIV-ALTONAGA/Goodman

**ARGOS GLOBAL PARTNER
SERVICES, LLC**; *et al.*,

      Plaintiffs,

v.

**FABIO CIUCHINI**, *et al.*,

      Defendants.

_____/

### ORDER

    **THIS CAUSE** came before the Court on Defendants, Fabio Ciuchini; Cosmo Global Lux

SARL ("Cosmo"); and Argos GPS North America ("Argos Indiana['s]") Second Amended

Combined Motion to Dismiss Amended Complaint [ECF No. 101] for lack of personal jurisdiction

under Federal Rule of Civil Procedure 12(b)(2); for improper venue under 28 U.S.C. section

1391(b); and for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs, Argos Global Partner Services LLC ("Argos USA"); Argos Global Partner Services,

Limited ("Argos Hong Kong"); and Argos GPS Trading (Shanghai) Co., Ltd. ("Argos Shanghai"),

filed a Memorandum of Law in Opposition to Defendants' Second Amended Motion to Dismiss

[ECF No. 108] on January 13, 2020; to which Defendants filed a Reply [ECF No. 113] on January

29, 2020.[1]  The Court has carefully considered the Amended Complaint [ECF No. 46], the parties'

---

[1] On January 23, 2020, the Court entered an Order [ECF No. 111] directing Plaintiffs to file a supplemental
response addressing Defendants' Motion to Dismiss for improper venue.  (*See id.*).  Plaintiffs filed their
Supplemental Response [ECF No. 112] on January 27, 2020.  Defendants' Reply addresses the arguments
in Plaintiffs' Opposition and the Supplemental Response.

written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I.  BACKGROUND

This case concerns a series of business disputes among several related, but competing, companies. (*See generally* Am. Compl.). Plaintiff, Argos USA, is a Florida limited liability company with its principal place of business in Miami-Dade County. (*See id.* ¶ 7). Luciana Ciuchini ("Luciana"), whose citizenship and residence are not alleged, is the manager and owner of Argos USA. (*See id.*). Plaintiff, Argos Shanghai is a corporation formed under the laws of China; and Plaintiff, Argos Hong Kong is a corporation formed under the laws of Hong Kong. (*See id.* ¶ 10). Argos Shanghai and Argos Hong Kong are subsidiaries of Argos USA. (*See id.*).

Defendant, Argos Indiana, is an Indiana limited liability company with a principal place of business in Indiana. (*See id.* ¶ 13). Defendant, Cosmo, is a Luxembourg limited liability company with its principal place of business in Luxembourg. (*See id.* ¶ 9). Defendant, Fabio Ciuchini ("Fabio"), is a citizen of Brazil and Italy and a resident of France. (*See id.* ¶ 8). Fabio is the manager of Argos Indiana and he controls two non-defendant entities — Argos Global Partner Services Ltda. ("Argos Brazil") and Argos Global Partner Services S.R.L. ("Argos Argentina"). (*See id.* ¶¶ 11, 13). Fabio's wife, Renata Canoletti Ciuchini ("Renata"), whose citizenship and residence are not alleged, is the 100 percent owner of Cosmo. (*See id.* ¶ 9). Fabio and Luciana are siblings. (*See id.* ¶ 8).

On July 19, 2019, Plaintiffs filed the operative complaint alleging nine claims for relief. These are alleged sometimes in the singular by reference to a Plaintiff; sometimes in the plural by reference to Plaintiffs; and sometimes by reference to a single and plural Plaintiffs in the same count, in a rather unclear fashion. (*See id.* 9–23). For purposes of the discussion in this Order, the

Court assumes the claims are brought by all Plaintiffs given the imprecision in the pleading. The claims presented for one or more of the Plaintiffs are: trademark infringement, false designation of origin, false advertising and unfair competition under the Lanham Act (Count I), infringement of common law rights in trademarks and trade name (Count II), and false designation of origin under 15 U.S.C. section 1125(a) (Count III) against Fabio and Argos Indiana; tortious interference with advantageous business relationships (Count IV), civil conspiracy (Count V), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count IX) against all Defendants; breach of contract (Count VI) and rescission (Count VII) against Cosmo; and breach of fiduciary duty (Count VIII) against Fabio. (*See generally* Am. Compl.).

The facts relevant to the claims follow.

**A.    The Argos Companies**

In 1998, Fabio and his business partner, Leonardo Franco, created Argos Brazil, a company broadly concerned with transportation, supply-chain, and import/export logistics. (*See* Second Am. Decl. of Fabio Ciuchini ("Fabio Decl.") [ECF No. 101-1] 1–13,[2] ¶¶ 3–4; Decl. of Luciana Ciuchini ("Luciana Decl.") [ECF No. 108-3] ¶ 5). Fabio's friend, Rodrigo Reis, designed a logo for the company depicting a ship over the word ARGOS. (*See* Fabio Decl. ¶ 4). In 2001, Argos Brazil acquired the domain name argosgps.com. (*See id.* ¶ 8). The Argos website, www.argosgps.com, displayed Argos Brazil's original logo and was available to viewers around the world. (*See id.*).

In 2002, Argos Brazil expanded its presence to the United States and established Argos North America, Inc. ("Argos NA") in Chicago, Illinois. (*See id.* ¶ 6).[3] The expansion to the United

---

[2] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all filings.

[3] According to Plaintiffs, Argos NA was incorporated in Florida in 2002. (*See* Luciana Decl. ¶ 8).

States led to the brand-name "Argos Group," which initially referred to the combination of Argos Brazil and Argos NA, but later included various Argos-related entities. (*See id.* ¶ 7).[4] The Argos website advertised a "global presence" showing an Argos-affiliated business in the United States. (*See id.* ¶ 8 (internal quotation marks omitted)). Defendants submit a client presentation from 2004, affixed with the Argos logo over the words "Argos Global Partner Services," demonstrating "Argos NA existed as part of Argos [Group], and that Argos [Group] marketed itself as having a presence in the United States by virtue of its operations through Argos NA." (*Id.* (alterations added; first internal quotation marks omitted); *see also id.*, Ex. C, May 2004 Presentation [ECF No. 101-1] 29–65).

Sometime in 2003, Luciana began working for Argos NA. (*See* Luciana Decl. ¶¶ 8–10; Fabio Decl. ¶ 9). In 2004, Luciana moved Argos NA from Chicago to Florida. (*See* Luciana Decl. ¶ 16). In 2005, Fabio and Franco severed their partnership and divided the companies, with Fabio keeping 100 percent of Argos Brazil and Franco keeping 100 percent of Argos NA. (*See id.* ¶ 19).[5]

On November 23, 2005, Argos USA was formed in Florida, and Luciana was designated the sole owner and director. (*See id.* ¶ 22). The ensuing relationships between Argos USA and Argos Brazil, and between Argos USA and the "Argos Group," are disputed. According to Plaintiffs, after the formation of Argos USA, there was a clear division of authority between the

---

[4] Plaintiffs do not dispute Argos Brazil's expansion led to the creation of a group of Argos-related entities under the name "Argos Group." However, several Argos-entities created after 2005, including Argos France, Argos Shanghai, and Argos Hong Kong, were created as subsidiaries of Argos USA — a company separate from Argos NA. (*See* Luciana Decl. ¶¶ 22; 29–34).

[5] According to Plaintiffs, Argos NA continued to operate under Franco for ten years, until it became inactive in 2015. (*See* Luciana Decl. ¶ 20).

companies and subsidiaries operated by Luciana and those operated by Fabio.  (*See* Am. Compl. ¶ 16).  Customers and suppliers of Argos USA generally maintained contact with Luciana, whereas customers of Argos Brazil and Argos Argentina generally maintained contact with Fabio. (*See id.*).

According to Defendants, "[a]lthough corporate formalities were observed, Argos USA never held itself out as anything other than an entity that was affiliated with Argos and a member of Argos Group."  (Fabio Decl. ¶ 12 (alteration added)).  Defendants submit a January 26, 2006 Letter on Argos Global Partner Services letterhead (*see id.*, Ex. F [ECF No. 101-1] 74–75) sent to suppliers stating "Argos [NA] has recently changed the company name from Argos [NA] to Argos [USA] . . . . There are no other changes besides the formal name of the company."  (*Id.* 74 (alterations added; capitalization and bold omitted))).  The letter lists Fabio Ciuchini as "Director" and identifies the affiliated website as www.argosgps.com.  (*Id.*).

Argos USA concedes it and its subsidiaries shared the argosgps.com website domain with Argos Brazil and Argos Argentina.  (*See* Am. Compl. ¶ 22; Luciana Decl. ¶ 40).  Argos USA employees used email addresses with "@argosgps.com" until January 11, 2018.  (*See* Luciana Decl. ¶ 41).[6]  Defendants also contend "Argos USA's trade name is identical to Argos, the Brazilian entity . . . [and] [s]ince[] Argos USA was affiliated with Argos and operated as part of Argos Group, Argos agreed to allow Argos USA [to] utilize the 'Argos' trade name and logos under similar terms as Argos NA."  (Fabio Decl. ¶ 11 (alterations added)).  As late as 2017, Argos

---

[6] According to Plaintiffs, customers in the United States seeking to visit the argosgps.com website would be automatically rerouted to argosus.com.  (*See* Luciana Decl. ¶ 40).  Defendants explain argosus.com was a "second domain" name used for customers in the United States, but "those persons were never . . . routed to a different website . . . [and] there was only one website that everyone around the world could see concerning Argos and concerning Argos USA, regardless of geographic location."  (Fabio Reply Decl. [ECF No. 113-1] ¶ 3 (alterations added)).

USA employees communicated to customers in emails using "@argosgps.com" email addresses. (*See* Fabio Reply Decl. [ECF No. 113-1] ¶ 3; *see also id.*, Ex. A, Argos USA Emails [ECF No. 112-1] 7–11). Emails to Argos USA's customers list the company's address as www.argosgps.com, show an "Argos Group" logo, and also use the original Argos Logo containing a ship above the words "Argos" and "global partner services." (Argos USA Emails 7, 11).

Plaintiffs do not contest Argos USA used the same trade name as Argos Brazil.[7] Following the creation of Argos USA, Luciana formed Argos France, Argos Shanghai, and Argos Hong Kong as subsidiaries of Argos USA. (*See* Am. Compl. ¶ 15). According to Plaintiffs, "[n]o later than 2009, [Luciana] assumed full responsibility for Argos USA." (Luciana Decl. ¶ 26 (alterations added)).[8]

### B.     Creation of Cosmo and Sale of Argos France

In 2017, Fabio informed Luciana he wanted to leave Brazil, remove his name from ownership of the Brazilian companies, change the Argos companies' structure, and create a holding company in Luxembourg in his wife, Renata, and Luciana's names. (*See* Luciana Decl. ¶ 54). According to Plaintiffs, Fabio proposed restructuring the various Argos entities so that "Argos

---

[7] Plaintiffs set forth conflicting allegations regarding their use of the Argos trade name. In the Amended Complaint, Plaintiffs allege "[i]n 2005, Argos USA was formed and first used the words "Argos" and "Argos Global Partner Services" (the 'Marks') in connection with [numerous] goods and services in the United States[.]" (Am. Compl. ¶ 20 (alterations added; capitalization omitted)). Yet in the declaration submitted with their Opposition, Plaintiffs concede Argos NA, a U.S. corporation, was founded in 2002, and Luciana travelled to the United States to work for Argos NA *prior to* the creation of Argos USA. (*See* Luciana Decl. ¶¶ 4–16). Luciana further states after Fabio and Franco severed their business relationship, Franco "competed with Argos USA by running Argos NA for 10 more years." (*Id.* ¶ 20).

[8] Again, the Court notes Plaintiffs' conflicting allegations. In the Amended Complaint, Plaintiffs state "Luciana formed Argos USA," following which there was a "clear division of authority" between the Argos businesses associated with Luciana and those associated with Fabio. (Am. Compl. ¶¶ 15–16 (capitalization omitted)). In her declaration, Luciana states she did not "assume[] full responsibility" for Argos USA until 2009 — four years after the incorporation of Argos USA. (Luciana Decl. ¶ 26 (alteration added)).

USA and its subsidiaries Argos France, Shanghai and Hong Kong" would be transferred "to a company in Luxemburg [sic]." (*Id.* ¶ 56). Luciana did not agree to the transfer of Argos USA to Fabio's control, but the parties continued to negotiate the transfer of Argos USA's subsidiaries. (*See id.* ¶¶ 57–59).

In November 2017, Fabio's wife, Renata established a new company — Cosmo — in Luxembourg. (*See* Decl. of Renata Canoletti Ciuchini ("Renata Decl.") [ECF No. 101-2] 1–5). Argos USA and Cosmo drafted a share purchase agreement ("SPA") contemplating the sale of Argos France to Cosmo. (*See* Luciana Decl. ¶¶ 63–64). There were multiple versions of the SPA, and the parties dispute whether any version was fully executed. (*See id.* ¶¶ 63–84; Renata Decl. ¶¶ 14–18). According to Defendants, the parties fully executed a SPA dated December 6, 2017. (*See* Fabio Decl. ¶ 14). Defendants submit a fully executed version of the December 6, 2017 SPA with their Motion. (*See* Defs.' Dec. 6, 2017 SPA [ECF No. 101-2] 7–13). Defendants' December 6, 2017 SPA has a governing-law and choice-of-forum clause in favor of Luxembourg. (*See id.* ¶¶ 12.1–12.2).

According to Plaintiffs, the December 6, 2017 SPA is fabricated. (*See* Luciana Decl. ¶ 63). Plaintiffs allege Defendants did not sign the December 6, 2017 SPA until recently. (*See id.* ¶ 64). Instead, the parties continued negotiating the sale of Argos France long after December 6, 2017, eventually entering into a *verbal* contract to sell Argos France to Cosmo for $85,400.00. (*See* Am. Compl. ¶ 74). In support of their contention Defendants' version of the December 6, 2017 SPA is fabricated, Plaintiffs submit (1) their own version of the same document showing *only* Luciana's signature on behalf of Argos USA (*see* Pls.' Dec. 6, 2017 SPA [ECF No. 108-3] 36–42); and (2) a *later* version of the SPA with a forum-selection clause in Miami, also showing only Luciana's signature (*see* Dec. 29, 2017 SPA [ECF No. 108-3] 49–55).

Luciana declares she asked Fabio to sign a later version of the SPA in January 2018, but he refused, evidencing the December 6, 2017 SPA was never signed in the first instance. (*See* Luciana Decl. ¶¶ 73–74). Luciana also states she and Fabio engaged in numerous conversations regarding the proposed sale of Argos France over skype and email throughout late 2017 and early 2018, while she was in Miami. (*See id.* ¶¶ 66–74). According to Plaintiffs, the resulting verbal contract contemplated payment would be made in Miami. (*See* Am. Compl. ¶ 75). Ultimately, Cosmo took over the operation of Argos France but never paid Plaintiffs. (*See id.* ¶¶ 76, 83).

### C. Business Disputes Between Fabio and Luciana and Creation of Argos Indiana

Sometime in 2018, business disputes arose between Luciana and Fabio. According to Plaintiffs, beginning in January 2018, Argos USA began to receive complaints from customers and suppliers of Argos Shanghai and Argos Hong Kong that payments were being diverted and/or were not timely made. (*See* Luciana Decl. ¶ 85). Plaintiffs contend Fabio (who until June 13, 2018 was the executive director and legal representative of Argos Shanghai) transferred money from, or redirected money meant for, Argos Shanghai and Argos Hong Kong to Argos France and Argos Brazil without authorization. (*See* Am. Compl. ¶¶ 91a–b; *see also* Luciana Decl. ¶¶ 86–87). Luciana terminated Fabio as Argos Shanghai's legal representative in June 2018. (*See* Luciana Decl. ¶ 93).

Also, in January 2018, Fabio blocked Argos USA's email access to argosgps.com. (*See id.* ¶ 42).[9] In response, Argos USA created new emails for its business through argosus.com. (*See id.*).

---

[9] Defendants state "neither [Fabio] nor Argos have [sic] ever blocked communications among Argos USA employees . . . [but] [w]hen Argos USA chose to operate independently from Argos Group, Argos stopped routing those email communications through Argos'[s] proprietary network . . . [and] Argos USA's employees were free to communicate anyway [sic] they wanted through their own computer network." (Fabio Decl. ¶ 29 (alterations added; internal quotation marks omitted)).

According to Defendants, in early 2018, Luciana began to "disseminate[] false information to customers about [Fabio's] character and credit [sic] worthiness." (Fabio Decl. ¶ 16 (alterations added)). Argos USA also made "arbitrary demands . . . designed to interrupt or increase the cost of Argos' operations." (*Id.* (alteration added)). Defendants contend Argos USA's conduct "prompted Argos to take steps to sever its relationship with Argos USA . . . and [b]y mid 2018, Argos USA had ceased operating as part of Argos Group. (*Id.* ¶¶ 16–17 (alterations added)). Subsequently, Argos USA "aggressively compete[d] with Argos," removed its name from the argosgps.com website, and began to use the www.argosus.com website with a new logo but the same name. (*See id.* ¶ 17 (alteration added)).

In March 2018, "to avoid interruption of services to its customers," Fabio formed Argos Indiana. (*Id.* ¶ 18; *see also* Am. Compl. ¶ 19; Luciana Decl. ¶ 4). Defendants contend "even though Argos USA no longer wanted to be part of the Argos Group, it nonetheless intended to continue to conduct its business using Argos' brand and trade name without Argos' authorization." (Fabio Decl. ¶ 18). Argos Indiana did not hold itself out as being affiliated with Argos USA, nor did it market or promote its services in Florida. (*See id.* ¶ 19). Argos's website displays Argos Indiana as being part of the Argos Group. (*See id.*).

Plaintiffs allege the creation of Argos Indiana caused customer confusion and interfered with Argos USA's business. (*See* Am. Compl. ¶ 29). According to Plaintiffs, Argos USA "formed and first used the words 'Argos' and 'Argos Global Partner Services' (the 'Marks') in connection with numerous goods and services within the United States[.]" (*Id.* ¶ 20). Notwithstanding Argos USA's previous affiliation with Argos Brazil, Argos NA, and the Argos Group, Plaintiffs insist Argos USA has "continuously maintained *exclusive* rights over the Argos and Argos Global Partner Services trademark" for over 13 years. (*Id.* ¶ 25 (emphasis added; capitalization omitted)).

In the same vein, Plaintiffs contend Defendants "intentionally and unjustifiably interfered" with Argos USA's customers. (*Id.* ¶ 60). Plaintiffs do not identify the customers by name and instead label them as "Company A," "Company B," "Company C," "Company D," and "Company E." (*Id.* ¶¶ 58a–e). Plaintiffs also contend Fabio formed a new company — Argos Global Partner Services UMC, Inc. ("Argos California") — for the purpose of interfering with a $20,000,000.00 contract between Argos USA and "Company F." (*Id.* ¶ 63).

Plaintiffs submit several invoices dated after the creation of Argos Indiana evidencing customer confusion between Argos Indiana and Argos USA. (*See* Luciana Decl., Ex. 21, Customer Invoices [ECF No. 108-3] 91–98). Along with their Amended Complaint, Plaintiffs also submit a letter from Fabio to Argos Shanghai's suppliers informing the suppliers Argos USA was no longer part of the Argos Group. (*See* Am. Compl. ¶ 61; *id.*, Ex. A July 23, 2018 Letter [ECF No. 41-1]).[10]

Finally, Plaintiffs allege sometime between January and July 2018, Fabio installed a software program in Cosmo "for the purpose of using Argos USA's data, businesses and confusing customers." (Am. Compl. ¶ 19b (capitalization omitted)). In her declaration, Luciana explains she "implemented an Enterprise Resource Planning (ERP) system for Argos USA" in 2012. (Luciana Decl. ¶ 44). The system was then implemented in Argos Hong Kong and Argos Shanghai. (*See id.*). In 2018, "Fabio copied the system database and hijacked the systems in Shanghai and Hong Kong, diverting all the business from these two subsidiaries to Argos France and/or [Fabio's] new Chinese Companies." (*Id.* ¶ 45 (alteration added)).

According to Defendants, the system to which Plaintiffs refer is a distribution management computer software program called "Prophet 21." (Fabio Decl. ¶ 28). "When it became clear that

---

[10] Defendants state the letter was sent by non-party Argos Brazil. (*See* Mot. 21).

Argos USA would leave Argos Group, Argos obtained its own licenses to . . . Prophet 21," which were originally obtained by Argos USA "with the idea that it [sic] would be used by Argos Group (except Brazil). " (*Id.* (alteration added)). Defendants explain "[t]he purchase and installation of the Prophet 21 software was performed by Argos' IT personnel in Brazil and France, and in the course of this work they did not access information located in Argos USA's servers in Florida and took no purposeful action directed at the United States or Florida." (*Id.* (alteration added)).

### C. Argos Indiana's Florida Contacts

Argos Indiana opened a checking account in Florida but, according to Defendants, since opening the account, Argos Indiana has not directed payments to any person or entity in Florida or routed money through Florida (other than its legal counsel); nor has Argos Indiana received payments routed through Florida or from a Florida resident or Florida-based entity. (*See id.* ¶ 20). Argos Indiana's wire transfer instructions to its clients list a bank account with an address in Florida, but wire transfers sent or received by Argos Indiana are routed through California and New York. (*See id.*). Otherwise, according to Defendants, Argos Indiana does not conduct business with customers in Florida. (*See id.* ¶ 21).

Plaintiffs submit evidence Argos Indiana has conducted business with at least one Florida Company — OIA Global. Luciana states she obtained an invoice "as a result of OIA Global's confusion showing a shipment by Argos Indiana through OIA Global that originated in Miami." (Luciana Decl. ¶ 105; *see also id.*, Ex. 20, OIA Invoice [ECF No. 108-3] 89). Luciana further states the "shipper was Horizon Global Americas, one of the entities that invoiced Argos USA for Argos Indiana shipments." (*Id.*; *see also id.*, Ex. 21 Customer Invoices 91).

Defendants insist Plaintiffs misstate Argos Indiana's relationship with OIA. (*See* Fabio Reply Decl. ¶ 5). Defendants explain the OIA Invoice

concerns [a] purchase order . . . placed by *Argos France* on July 31, 2018 from a supplier Cequent Performance Products (also known as Horizon Global Americas) located in Plymouth Michigan.[11] . . . [A] small portion of the supplies could not be shipped because they [sic] items were located in a warehouse in Starke, Florida. To avoid delay, Argos France requested that Argos Indiana assist by coordinating the pick up of the parts at an address located at 105-2 L M Gaines Blvd., Starke, FL 32091. Argos Indiana coordinated with OIA Global for this purpose . . . . Argos Indiana was not the entity that placed the order for the supplies in the first place, and no aspect of the purchase order directs any shipment to Florida or from Florida. When Argos France placed the original order from a Michigan supplier it had no way of knowing that a portion of the supplies would be stuck in a warehouse in Starke, Florida. [Fabio] has no knowledge as to why the OIA Global Invoice reflects an "origin" of "USMI=Miami, United States" because the supplies at issue were located in Starke, Florida and not in Miami.

(*Id.* (alterations and emphasis added)).

\*     \*     \*

As noted, Plaintiffs bring three trademark infringement claims against Fabio and Argos Indiana (Counts I–III); claims for tortious interference with advantageous business relationships (Count IV), civil conspiracy (Count V), and violation of the FDUTPA (Count IX) against all Defendants; claims for breach of contract (Count VI) and rescission (Count VII) against Cosmo; and a claim for breach of fiduciary duty (Count VIII) against Fabio. (*See generally* Am. Compl.). These claims arise from two separate sets of factual allegations: (1) the contract claim allegations concerning the sale of Argos France to Cosmo; and (2) the various tort claim allegations concerning Defendants' alleged interfering and infringing activities following the creation of Argos Indiana. As explained below, only the first set of allegations sets forth sufficient contacts to hale Defendant Cosmo into this forum.

---

[11] The address for Horizon Global Americas listed on the invoice submitted by Plaintiff is for a P.O. Box in Chicago. (*See* Customer Invoices 91).

## II.     LEGAL STANDARD

Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim.  The relevant standards for these are described.

### A.     Dismissal for Lack of Personal Jurisdiction Under Rule 12(b)(2)

Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (alteration added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied*, see Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). "There are two types of personal jurisdiction: specific and general."  *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990).  "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state] . . . ." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (alterations added; citations omitted).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction."  *Posner*, 178 F.3d at 1214 (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)).  "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). To the extent the defendant's proffered evidence does not contradict the plaintiff's jurisdictional allegations, the plaintiff's allegations must be accepted as true. *See Posner*, 178 F.3d at 1215 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). But to the extent the defendant does contradict the plaintiff's allegations, the burden shifts back to the plaintiff, this time requiring the plaintiff to prove — not merely allege — jurisdiction by affidavits, testimony, or other documents. *See id.* at 1214–15; *Future Tech.*, 218 F.3d at 1249 (citation omitted).

A party cannot meet its evidentiary burden by submitting affidavits asserting only "conclusory assertions of ultimate fact." *Posner*, 178 F.3d at 1215. Rather, the affidavits must "set forth specific factual declarations within the affiant's personal knowledge." *Id.* "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); other citation omitted).

### B.     Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss a claim against it by asserting the complaint fails state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain more than "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Therefore a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted)

### III. ANALYSIS

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) (citations omitted). The Court addresses whether it has general or specific personal jurisdiction over Defendants and then turns to the sufficiency of Plaintiffs' remaining claims over any Defendants as to whom the Court has personal jurisdiction.

### A. General Personal Jurisdiction

As noted, under Florida's long-arm statute the Court may exercise general personal jurisdiction over any defendant "who is engaged in substantial and not isolated activity within this state, . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2) (alteration added). "The reach of section 48.193(2) extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (alterations, citation, and internal quotation marks omitted). So, the Court need only determine whether the exercise of general jurisdiction over Defendants would exceed constitutional bounds. *See id.*

Plaintiffs insist Defendants Fabio and Argos Indiana engaged in substantial and not isolated activity in this forum because (1) Argos Indiana has a bank account in Florida, and (2) Argos

Indiana has at least one customer — OIA Global — here. (*See* Opp'n 13–16). According to Defendants, these contacts are insufficient under Florida's long-arm statute and the exercise of jurisdiction based on these contacts would violate due process.[12] (*See* Mot. 16–18, 22; Reply 8–10).

Curiously, none of the parties address *Daimler AG*, 571 U.S. 117, which the Court finds controlling with respect to Argos Indiana. Argos Indiana is not incorporated in Florida, nor is its principal place of business here. (*See* Am. Compl. ¶ 13). Under *Daimler AG*, the "paradigm forum" for the exercise of general jurisdiction with respect to a corporation is its place of incorporation and principal place of business. *Id.* at 137. "Outside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an exceptional case." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (citation and internal quotation marks omitted). In other words, Plaintiffs must show Argos Indiana's "activities in [this] forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Id.* at 1318 (alteration added; quoting *Carmouche*, 789 F.3d at 1205).

A brief comparison between this case and *Carmouche* reveals Plaintiffs have not made this showing. In *Carmouche*, the Eleventh Circuit affirmed the district court's dismissal of an action against a Panamanian corporation with Florida contacts including "insurance policies with several Florida companies, a bank account with Citibank that is handled by a department in Miami, and membership in the Florida Caribbean Cruise Association, a non-profit trade organization." 789 F.3d at 1203. Argos Indiana's connections with Florida — a bank account and a (disputed)

---

[12] Defendants also argue there is no general jurisdiction over Cosmo, but Plaintiffs do not argue Cosmo is subject to jurisdiction under the general jurisdiction provision of Florida's long-arm statute. (*See* Opp'n 13).

business relationship with Florida-based OIA Global (*see* Opp'n 13–16) — are less pronounced than those considered in *Carmouche*. *See also Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386 (S.D. Fla. 2014) (finding no general personal jurisdiction over defendant corporation that contracted with Florida-based cruise lines, purchased insurance in Florida, and was paid from Florida banks). Plaintiffs' only case in support of their general jurisdiction argument, *United Rope Distributors, Inc. v. Kimberly Line*, 785 F. Supp. 446 (S.D.N.Y. 1992), is not binding and pre-dates *Daimler AG* and its progeny.

Plaintiffs' argument also fails with respect to Fabio. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG*, 571 U.S. at 137 (citation omitted). Fabio is a citizen of Brazil and Italy and a resident of France. (*See* Am. Compl. ¶ 8). "Beyond [being domiciled in the forum], the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (alteration added; citations omitted). Neither instance has occurred here; therefore, general personal jurisdiction over Fabio is also lacking.

### B. Specific Personal Jurisdiction

A defendant is subject to specific personal jurisdiction under Florida's long-arm statute if the plaintiff's claim "aris[es] from" a defendant's specific forum-related contacts. Fla. Stat. § 48.193(1) (alteration added). As noted, if a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to show the inapplicability of the state's long-arm statute. *See Future Tech.*, 218 F.3d at 1249. "If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or

other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.* (citation omitted).

Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit. *See Cronin v. Washington Nat. Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) ("In this case the Florida long-arm statute . . . provides personal jurisdiction over the contract claim but arguably not the negligence claims." (alteration added; footnote call number omitted));[13] *see also* 7 Callmann on Unfair Comp., Tr. & Mono. § 24:4 (4th Ed.). The Amended Complaint presents the Court with two separate sets of factual allegations — one set giving rise to Plaintiffs' contract claims (Counts VI and VII) and a slightly broader set giving rise to Plaintiffs' remaining tort claims. The Court analyzes Plaintiffs' contract and tort claims separately.

### 1. Jurisdiction Over Cosmo with Respect to Contract Claims (Counts VI and VII)

*Long-Arm*. Under section 48.193(1)(a)(7), Florida Statutes, the Court may exercise long-arm jurisdiction over a defendant who breaches a contract by failing to perform an act required to be performed in Florida. Plaintiffs allege Argos USA and Cosmo entered into an oral agreement to pay Argos USA $85,400.00 for the sale of Argos France. (*See* Am. Compl. ¶ 74). Argos USA transferred operational control of Argos France to Cosmo on December 29, 2017, but Cosmo never paid the purchase price. (*See id.* ¶ 83). The payment, according to Plaintiffs, "was to be made to Argos USA at its offices in Miami, Florida." (*Id.* ¶ 75 (capitalization omitted)). Plaintiffs also allege, in the alternative, Argos USA rescinded the oral contract, and they demand Cosmo transfer control and operation of Argos France back to Plaintiffs. (*See id.* ¶¶ 83–87). These contract allegations make a prima facie case Cosmo "fail[ed] to pay a contractual debt where payment is

---

[13] In *Cronin*, the court found personal jurisdiction over the entire case because "all of the claims arose from the same jurisdiction generating event[.]" *Cronin*, 980 F.2d at 671 (alteration added).

due to be made in Florida," which is "sufficient to satisfy Florida's long-arm provision that refers to contractual acts required to be performed in Florida." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 643 (Fla. 4th DCA 2013) (alteration added; citation and internal quotation marks omitted); *see also Olson v. Robbie*, 141 So. 3d 636, 640 (Fla. 4th DCA 2014) ("[T]he contract itself must *require* performance in Florida in order to invoke Florida jurisdiction under section 48.193[(1)(a)]." (alterations added; citation omitted; emphasis in original)).

As discussed, Defendants contend the contract for the sale of Argos France was written, not verbal. (*See* Renata Decl. ¶ 14). Defendants present a copy of the written contract — Defendants' December 6, 2017 SPA — purportedly fully executed at the time of contracting. (*See* Defendants' Dec. 6, 2017 SPA).

While such evidence would seem to contradict Plaintiffs' allegations of a verbal contract, Plaintiffs substantiate Luciana's allegations with evidence Defendants' December 6, 2017 SPA is fabricated. (*See* Luciana Decl. ¶ 63). According to Luciana, Cosmo did not sign the December 6, 2017 SPA in the first instance. (*See id.* ¶ 64). Instead, Plaintiffs made several amendments to the SPA after December 6, 2017, including adding forum-selection and choice-of-law clauses in favor of Miami, and presented an updated version to Cosmo. (*See id.* ¶ 75; Dec. 29, 2017 SPA). The December 29, 2017 SPA is not fully executed, but Cosmo presents no evidence contradicting Plaintiffs' claim Argos USA and Cosmo entered into a verbal contract *after* failing to execute the December 29, 2017 SPA. And although Cosmo contends the contract is not "required to be performed in Florida" (Mot. 23), Cosmo merely points to the selection clause (favoring Luxembourg) in the December 6, 2017 SPA, which the Court does not credit given Plaintiffs' evidence of fabrication.

Mindful that the Court must construe all reasonable inferences in favor of the plaintiff, *see Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006 (citation omitted)), the Court finds Plaintiffs have substantiated their jurisdictional allegations Cosmo breached an oral contract providing for performance in Florida.

**Due Process.**   Plaintiffs must also show the exercise of jurisdiction over Cosmo would not offend due process. *See Madara*, 916 F.2d at 1514 ("If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment . . . ." (alteration added; citations omitted)).   The "mere failure to pay money in Florida, standing alone, is not sufficient to obtain jurisdiction consistent with due process over a nonresident defendant," *Magic Pan Int'l, Inc. v. Colonial Promenade*, 605 So. 2d 563, 566 (Fla. 5th DCA 1992) (citations omitted), but "when the failure to pay a debt owed in this state . . . is accompanied by some other related substantial act in Florida that is purposefully directed toward the state or its residents, the exercise of personal jurisdiction over such nonresident defendants is proper," *deMco Techs., Inc. v. C.S. Engineered Castings, Inc.*, 769 So. 2d 1128, 1131 (Fla. 3d DCA 2000) (alteration added).   When "inspecting a contractual relationship for minimum contacts, [the Eleventh Circuit] follow[s] a 'highly realistic approach' that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) (alterations added; citation omitted).   The Court must consider the particular facts of the case and ask "the often difficult question of what, beyond the bare contract, must be present to satisfy the 'minimum contacts' rule?" *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986) (citations omitted).

This is a close case.  On the one hand, the alleged verbal contract was for a one-time sale, and, as described, did not contemplate a continuous business relationship between Cosmo and a Florida-based entity.  *See Future Tech.*, 218 F.3d at 1251 (affirming dismissal for lack of personal jurisdiction where contract "was for a one-time service, as opposed to a continuous business relationship").  As Defendants note, Cosmo did not travel to Florida and does not otherwise conduct business here.  (*See* Reply 14); *see also Future Tech.*, 218 F.3d at 1251 (noting the defendant did not travel to Florida until after the purported breach and concluding, "[b]y all accounts, the defendant did not reasonably anticipate being haled into a Florida court" (alteration added)).

On the other hand, according to Plaintiffs, Cosmo was created for the purpose of obtaining Argos USA's subsidiaries, including Argos France.  (*See* Luciana Decl. ¶¶ 54–59).  Following its creation, Cosmo directed more than 40 communications into Florida via skype, email, and telephone throughout the course of negotiations (*see id.* ¶ 82);[14] these indicate Cosmo was more than a "passive purchaser."  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268.  And, as noted, payment was to be made in Florida.  (*See* Am. Compl. ¶ 75).  Considered as a whole, Cosmo's contacts are not merely "random" or "fortuitous;" neither are they so "attenuated" as to prevent the Court from appropriately exercising personal jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations and internal quotation marks omitted).

---

[14] Although Fabio's wife, and not Fabio, is the President of Cosmo, Plaintiffs contend (and Defendants do not contest) Fabio negotiated the sale of Argos France on behalf of Cosmo.  (*See* Luciana Decl. ¶ 59).

Defendants contend evidence of Fabio's electronic communications to Luciana should be disregarded because (1) the communications took place after December 29, 2017 (the date of the second SPA) and (2) Luciana's evidence of the communications consists of translated documents that are not certified.  (*See* Reply 2–3, 5, 15 n.8).  As to the first contention, the Court is analyzing the alleged *verbal* contract, and not the December 29, 2017 SPA.  The December 29, 2017 SPA serves only as evidence the December 6, 2017 SPA was not fully executed in the first instance.  And the Court is not persuaded by Defendants' second contention given there is no suggestion the translations are inaccurate.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476 (internal quotation marks and citation omitted). In appropriate cases, the Court may evaluate the burden on the defendant, Florida's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in further fundamental substantive social policies. *See id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *TransGlobal Airways Corp. v. JAF, LLC*, No. 06-22592-Civ, 2007 WL 9702180, at *16 (S.D. Fla. Nov. 13, 2007) (internal quotation marks and citations omitted).

Applying these principles, the assertion of jurisdiction over Cosmo does not offend due process. First, "Florida has a strong interest in adjudicating disputes involving its residents and those who do business with its residents." *Id.* (citation omitted). Second, the Court sees no reason why this issue cannot be effectively and efficiently determined in Argos USA's home forum, where the alleged contract was to be performed. While Defendant is a Luxembourg company, it has not presented evidence it will be unduly burdened by litigating this case here or that litigation will run afoul of Florida or Luxembourg's fundamental social policies. Should litigation of this issue reveal Defendants' December 6, 2017 SPA (including the Luxembourg forum-selection clause) was *not* fabricated, Plaintiffs' causes of action for breach of a verbal contract and rescission would, of course, fail, and the parties could litigate the written contract in the contractually-designated forum.

## 2.      Jurisdiction Over Defendants with Respect to Tort Claims

Because the Court finds exercising personal jurisdiction over Defendants with respect to Plaintiffs' tort claims would exceed the limits of the Due Process Clause, as explained below, it does not address whether the alleged torts fall within the ambit of Florida's long-arm statute.[15]  *See Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) ("[T]he Due Process Clause imposes a more restrictive requirement than does Florida's [l]ong-[a]rm [s]tatute." (alterations added; internal quotation marks and citation omitted)); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) ("The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts.").

Plaintiffs argue the Court has personal jurisdiction over Defendants with respect to five of their seven tort claims — the three trademark infringement claims (Counts I–III), the claim for violation of the FDUTPA (Count IX), and the tortious interference claim (Count IV).  (*See* Opp'n 19–23).[16]

---

[15] The Court is skeptical Plaintiffs adequately state a cause of action for trademark infringement in the first instance.  Although Plaintiffs claim "Argos USA was formed and *first used* the words 'Argos' and 'Argos Global Partner Services' in connection with numerous goods and services in the United States (Am. Compl. ¶ 20 (emphasis added)), Plaintiffs readily admit Argos NA operated in the United States for years prior to the creation of Argos USA.  (*See* Luciana Decl. ¶¶ 4b, 8–16).  Defendants are correct that "[c]ommon-law trademarks are appropriated only through actual prior use in commerce."  (Reply 9 (alteration added; internal quotation marks omitted; quoting *Crystal Entertainment & Filmworks v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011))).  Nevertheless, the parties do not adequately brief the meaning of "prior use," whether it means "first use," or how the "prior use" requirement functions within a group of related companies that disaffiliate but continue to function in largely separate geographic regions.  Because the Court finds it lacks jurisdiction over Defendants with respect to Plaintiffs' trademark claims under the Due Process Clause, it declines to address the issue further.

[16] Plaintiffs also allege a claim of civil conspiracy (Count V) against all Defendants and a claim of breach of fiduciary duty (Count VIII) against Fabio, but Plaintiffs do not argue these alleged torts serve as a basis for personal jurisdiction.  And as to Count VIII, the conduct complained of is repetitive of that in other counts which, as discussed in this Order, exhibits no connection to Florida.  (*See* Am. Compl. ¶¶ 88–93).

The Court finds the exercise of specific personal jurisdiction over any of the Defendants with regard to the foregoing claims would violate due process because there is scant evidence Defendants' suit-related contacts connect them to Florida in a meaningful way. "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (citations and internal quotation marks omitted). "To permit the exercise of specific jurisdiction, there must first exist some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws. . . . Secondly, the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Id.* (second alteration added; citations, internal quotation marks, and footnote call number omitted).

With regard to a defendant's contacts in intentional tort cases, the Eleventh Circuit requires a showing "the defendant: (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.* at 1221 n.28 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); other citations omitted). Importantly, the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary *connection with the forum State* that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added; citations omitted). "[R]andom, fortuitous, or attenuated" contacts with the forum do not give rise to personal jurisdiction. *Id.* at 286 (alteration added; internal quotation marks and citation omitted).

Against this backdrop, the Court reviews Plaintiffs' allegations of Defendants' alleged tortious conduct. Plaintiffs allege the following:

- Argos USA was the first company to use the Marks in connection with numerous goods and services in the United States. (*See* Am. Compl. ¶ 20).

- Fabio and companies under his control compete with Plaintiffs through their use of a website showing the Marks. (*See id.* ¶ 35).

- Fabio has used the Marks for the purpose of "twisting"[17] Plaintiffs' customers and suppliers to his companies. (*Id.* ¶ 40).

- Fabio and Argos Indiana's use of the Marks increases the likelihood of customer confusion between Argos USA and Argos Indiana. (*See id.* ¶ 52).

- Fabio and Argos Indiana have used the Marks that rightfully belong to Argos USA on their website and in advertisements. (*See id.* ¶¶ 51, 56).[18]

- Fabio, Argos Indiana, and Cosmo were aware of business relationships between Plaintiffs and five unnamed companies, and Defendants interfered with these relationships by "twist[ing] the business to themselves." (*Id.* ¶ 60 (alteration added; internal quotation marks omitted)); *see also id.* ¶¶ 58–64).

- In July 2018, Fabio sent a letter to Argos Shanghai's suppliers informing the suppliers Argos Hong Kong and Argos USA were no longer affiliated with the Argos Group and one of Fabio's employees would handle the suppliers' business. (*See id.* ¶ 61).

- Fabio created a new company — Argos California — that interfered with a contract between Argos USA and another unnamed company. (*See id.* ¶ 63).

- Fabio, Argos Indiana, and Cosmo engaged in unfair and deceptive acts or practices by imitating Argos USA's Mark "in connection with the sale of its [sic] services in the state of Florida and elsewhere, thereby creating a likelihood of public confusion." (*Id.* ¶ 94).

- Fabio, Argos Indiana, and Cosmo have generally interfered with communications between Argos USA and its customers and suppliers. (*Id.* ¶ 97).

As Defendants rightly point out, whether these allegations state claims, the Amended Complaint makes scant reference to any tortious activity *in Florida*. Defendants affirm, through

---

[17] Plaintiffs define "twisting" as "causing a customer to replace business using misleading tactics." (Am. Compl. ¶ 40 n.1).

[18] These allegations may be found in the "wherefore" section following the cited paragraphs.

Fabio's sworn statements, neither Argos Indiana nor Fabio individually conducted business or engaged with customers in Florida. (*See* Fabio Decl. ¶¶ 21–26). According to Defendants, Argos Indiana conducts business with one service provider headquartered in Florida — OIA Global — but OIA Global provides its services from a location in Kentucky. (*See id.* ¶ 22). As to Cosmo, Defendants explain Cosmo is a "holding company," not a service provider, and Cosmo does not "sell any products or offers [sic] any service to the general public anywhere in the world." (Renata Decl. ¶¶ 4–5). Plaintiffs do not contest this characterization of Cosmo.

In Response, Plaintiffs present three new pieces of evidence: (1) a "Letter of Introduction" from Argos USA to its suppliers informing them Argos Group would be restructured; (2) an invoice from OIA Global concerning a shipment from a separate entity — Horizon Global Americas — that confused Argos USA with Argos Indiana, and (3) an "Information Sheet" allegedly sent to Argos Indiana's suppliers listing OIA Global as a "Trade Reference." (Luciana Decl. ¶¶ 96, 103; *see also id.* ¶ 105).

The "Letter of Introduction" is not addressed to any customer in Florida, and Luciana merely states it was sent to Argos USA's suppliers.[19] As to OIA Global, Defendants explain the invoice Plaintiffs present to the Court was requested by non-party Argos France. (*See* Fabio Reply Decl. ¶ 5). Argos Indiana "was not the entity that placed the order for the supplies" but was called upon to assist with the shipment when Argos France was made aware a portion of the supplies was in Florida. (*Id.*). And Defendants affirm the supplier, Horizon Global Americas, is a company located in Michigan. (*See id.*). As to the Information Sheet, Plaintiffs present no evidence it was

---

[19] In Plaintiffs' Supplemental Response Regarding Venue, Plaintiffs state "Fabio and Argos Indiana directed communications *into this district* for the purpose of twisting Plaintiff Argos USA's business for themselves as evidenced by the 'Letters of Introduction of Argos Indianapolis' and an Information Sheet sent by Argos Indiana to Plaintiff Argos USA's customers and suppliers." (Suppl. Resp. 2–3 (emphasis added)). This is merely argument, not evidence, because in Luciana's affidavit Plaintiffs fail to affirm the documents were directed at Florida-based customers.

sent to customers or suppliers in Florida, nor do they adequately explain what the document is or how it tends to support the notion Defendants committed a tort in Florida.

In sum, Plaintiffs' evidence of Defendants' *suit-based* conduct *in or directed at Florida* is minimal. Construed in the light most favorable to Plaintiffs, it includes: (1) Defendants' website, visible to internet users in Florida; and (2) Defendants' relationship with OIA Global. As to the former, "the mere posting of an infringing trademark on a website 'without more' is insufficient to demonstrate that [Defendants] purposefully aimed [their] activity toward Florida." *DCS Real Estate Investments, LLC v. Bella Collina Events, LLC*, No. 5:14-CV-678-JSM-PRL, 2015 WL 628586, at *3 (M.D. Fla. Feb. 12, 2015) (alterations added; quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008)). As to the latter, it is unclear Defendants' relationship with OIA Global gives rise to Plaintiffs' claims in the first instance.[20] Even if it did, the only event showing Defendants' interaction with OIA Global *in Florida* occurred at the behest of non-party Argos France. (*See* Fabio Reply Decl. ¶ 5). This is not the sort of "substantial connection" the Due Process clause requires. *Walden*, 571 U.S. at 284. Plaintiffs' insistence there are sufficient minimum contacts because *Argos USA* experienced injury in Florida (*see* Opp'n 24) is insufficient in light of *Walden*'s requirement Plaintiffs show Defendants' connection *to the forum*, "not just to a plaintiff who lived there." *Walden*, 571 U.S. at 288.

Plaintiffs' own case law supports this conclusion. In *Gazelles FL, Inc. v. Cupp*, the court found personal jurisdiction over the defendant with respect to the plaintiff's trademark infringement and FDUTPA claims was appropriate under Florida's long-arm statute, but not under the Due Process Clause. *See* No. 618CV544ORL22KRS, 2018 WL 7364591, at *7, 10 (M.D. Fla.

---

[20] The Amended Complaint does not reference OIA Global at all. Plaintiffs introduce evidence of Argos Indiana's relationship with OIA Global in their Opposition to Defendants' Motion and argue the relationship supports the exercise of *general* jurisdiction over Defendants, not specific jurisdiction. (*See* Opp'n 13–15).

Sept. 26, 2018). After reviewing *Walden*, the court in *Gazelles* declined to exercise personal jurisdiction over the defendant — who allegedly incorporated infringing marks on a website viewable in Florida — because the "Amended Complaint lacks allegations that show that Defendants purposely directed these activities toward Florida itself." *Id.* at *13.

For the foregoing reasons, the Court lacks specific personal jurisdiction over Defendants with respect to Plaintiffs' tort claims.

### C.     Whether Plaintiffs State Contract Claims

Absent jurisdiction over Fabio, Argos Indiana, and Cosmo with respect to Plaintiffs' tort claims, only Plaintiffs' contract claims against Cosmo remain. Plaintiffs make two claims: (1) breach of a verbal agreement to sell Argos France to Cosmo; and in the alternative, (2) rescission of the contract. The elements of a breach-of-oral-contract claim are the "same elements of a written contract;" namely the formation of a contract, the assumption of mutual obligations, tender of consideration, and breach. *Scherff v. Simba Grp., LLC*, No. 09-61835-Civ, 2010 WL 11504720, at *6 (S.D. Fla. Mar. 2, 2010), *report and recommendation adopted sub nom. Scherff v. Simba Grp.*, No. 09-61835-Civ, 2010 WL 11504722 (S.D. Fla. Apr. 19, 2010). To state a claim for rescission,

> a party must allege six elements: (1) the character or relationship of the parties, (2) the making of the contract, (3) the grounds for rescission, (4) that the party seeking rescission has done so and informed the other party to the contract, (5) if the rescinding party has received benefits from the contract, that the party has offered to restore the benefits if possible, and (6) that no adequate remedy is available at law.

*SureTec Ins. Co. v. Nat'l Concrete Structures, Inc.*, No. 12-60051-Civ, 2012 WL 12860161, at *4 (S.D. Fla. July 3, 2012) (citations omitted)

Construing the allegations in the light most favorable to Plaintiffs, Plaintiffs state claims for breach of oral contract and, in the alternative, rescission. Plaintiffs allege the formation of an

oral agreement to sell Argos France to Cosmo (*see* Am. Compl. ¶ 74); the assumption of mutual obligations and consideration in the form of payment for the transfer of control over Argos France (*see id.* ¶¶ 74, 83); and breach by virtue of Cosmo's lack of payment (*see id.* ¶ 76). As to rescission, Plaintiffs sufficiently allege (1) the character of the parties and (2) the formation of the contract. While slightly more tenuous, Plaintiffs also allege (3) the ground for rescission in that Cosmo took over Argos France without payment of consideration and used Argos France as an instrument of fraud (*see id.* ¶¶ 83–84); (4) Argos USA notified Cosmo it rescinded the contract (*see id.* ¶ 85); (5) Argos USA could not offer to restore any benefit received from the contract because no benefit was received in the first instance (*see id.* ¶ 86); and (6) there is no adequate remedy at law (*see id.* ¶ 87). Although this last element is stated in a conclusory fashion, the Court finds it sufficient because the claim for rescission is pled in the alternative to the breach-of-contract claim.

Because the Court has already found the alleged oral contract was to be performed in Florida, and the Court has personal jurisdiction over Cosmo with respect to the contract claims, venue is proper.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants, Fabio Ciuchini, Cosmo Global Lux SARL, and Argos GPS North America's Second Amended Combined Motion to Dismiss Amended Complaint **[ECF No. 101]** is **GRANTED in part** and **DENIED in part** as follows:

1.    Defendants' Motion to dismiss all claims against Fabio Ciuchini and Argos GPS North America under Rule 12(b)(2) is **GRANTED**. The claims against these Defendants are dismissed without prejudice.

2.    Defendants' Motion to dismiss all claims against Cosmo Global Lux SARL under Rule 12(b)(2) is **GRANTED** with respect to Counts **IV–V** and **IX**. Such claims are dismissed without prejudice. The Motion is **DENIED** with respect to Counts **VI** and **VII**.

3.    Defendants' Motion to dismiss for failure to state a claim under Rule 12(b)(6) is **DENIED** with respect to Counts **VI** and **VII**.

4.    Plaintiffs shall file a final amended complaint by **March 23, 2020** that: (a) includes only the contract-claims against Cosmo, (b) clearly identifies which Plaintiff or Plaintiffs bring those claims, and (c) contains detailed allegations concerning the citizenship of Argos USA and Cosmo in order for the Court to ascertain whether it has subject matter jurisdiction over the action.[21]

**DONE AND ORDERED** in Miami, Florida, this 11th day of March, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[21] "[A] limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (alteration added). Consequently, "[t]o sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company . . . ." *Id.* (alterations added).